**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**ERIE DIVISION**

**DAYONNA BRACE and**
**DANIELLE JONES,**

*Individually and on Behalf of All Others Similarly Situated,*

Plaintiffs,

v.

**PARTNERS TAVERN, INC.**
**d/b/a PARTNERS GENTLEMEN'S CLUB,**

Defendant.

Case No.: __________

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Dayonna Brace ("Brace") and Danielle Jones ("Jones") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, file their Class and Collective Action Complaint against Defendant Partners Tavern, Inc. d/b/a Partners Gentlemen's Club ("Defendant" or the "Club") and allege as follows:

## I. NATURE OF THE ACTION

1. This is a hybrid collective and class action brought by Plaintiffs, on behalf of themselves and all other current and former exotic dancers whom Defendant has employed to work within its Partners Gentlemen's Club, an adult entertainment club at 4712 East Lake Road in Harborcreek Township, Erie County, Pennsylvania ("Class Members").

2. In this case, Plaintiffs seek to recover, for themselves and Class Members, unpaid minimum wages, unlawfully withheld, deducted, and assigned tips; unlawful kickbacks; liquidated damages; and related relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq*. ("PMWA").

3. At all times relevant, Defendant: (a) classified Plaintiffs and Class Members as non-employee contractors; (b) paid Plaintiffs and Class Members no wages for hours or shifts worked; and (c) deducted, withheld, and assigned tips and/or other monies Plaintiffs and Class Members earned and received from Defendant's customers.

4. At all times relevant, Defendant controlled every meaningful aspect of Plaintiffs' and Class Members' exotic-dancer work within Defendant's Club, from who may dance and when to what they wear, what they charge, and how they are advertised.

5. At all times relevant, Plaintiffs and Class Members qualified as Defendant's "employees" and Defendant qualified as Plaintiffs' and Class Members' "employer" under the FLSA and Pennsylvania law.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over the FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over the PMWA claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts—the same work, at the same Club, under the same rules, for the same Defendant—which misclassified and failed to properly compensate Plaintiffs and all Class Members in the same unlawful manner.

7. This Court has general personal jurisdiction over Defendant, a Pennsylvania corporation with its principal place of business in Erie County, and specific personal jurisdiction because every claim arises from Defendant's operation of the Club there.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and all events giving rise to the claims occurred here, and this case's assignment to the Erie docket is proper under LCvR 3 because the claims arose in Erie County and the parties reside there.

## III. THE PARTIES

9. Brace is an adult domiciliary and resident of Erie, Pennsylvania.

10. During the period August 2020 through July 2026, Defendant employed Brace to work as an exotic dancer within the Club.

11. Brace's written consent to join this action under 29 U.S.C. § 216(b) is attached as Exhibit A.

12. Jones is an adult domiciliary and resident of Erie, Pennsylvania.

13. During the period February 2025 through about July 2026, Defendant employed Jones to work as an exotic dancer within the Club.

14. Jones' written consent to join this action under 29 U.S.C. § 216(b) is attached as Exhibit B.

15. Defendant is a Pennsylvania corporation.

16. Defendant owns and operates, under the names "Partners Tavern" and "Partners Gentlemen's Club," an adult entertainment club featuring exotic dancers at its principal place of business, located at 4712 East Lake Road, Erie, Pennsylvania 16511, in Harborcreek Township, Erie County.

## IV. FLSA COVERAGE

17. At all times relevant, Defendant qualified as an "enterprise" under 29 U.S.C. § 203(r)(1) and as an "enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C. § 203(s)(1)(A), because it had two or more employees engaged in commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and because its annual gross volume of sales made or business done was not less than $500,000.

18. At all times relevant, Defendant's employees, including its general manager, disc jockeys ("DJs"), door, kitchen, and floor staff, Plaintiffs, and Class Members regularly and recurrently handled, sold, and/or worked on goods that moved in interstate commerce, including the sound and DJ equipment used to play the Club's music; the stage, poles, mirrors, and LED lighting; furniture and fixtures; the clothing, footwear, and cosmetics Plaintiffs and Class Members wore; the food (hot dogs, sausages, meatballs, nachos, and cheese) Defendant sold; beverages, mixers, ice, cups, and set-ups sold to its bring-your-own-bottle clientele; the "gold coin" tokens Defendant sold; the automated teller machine ("ATM") inside the Club, which connects to interstate banking networks; and the telephones and internet-connected devices through which Defendant communicates with its workers and advertises.

19. Upon information and belief, Defendant's annual gross volume of sales made or business done has been not less than $500,000 in each relevant year.

20. Independently and in the alternative, Plaintiffs and Class Members were themselves "engaged in commerce" within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1) because, as a regular and recurrent part of their work, they used the channels and instrumentalities of interstate commerce. *See* 29 C.F.R. §§ 776.9–776.12.

21. During the relevant period: (a) Defendant required Plaintiffs and Class Members to communicate with its scheduler(s) and/or general manager by telephone and text message to obtain shifts, confirm attendance, and obtain permission for time off, which Plaintiffs and Class Members regularly did across state lines; (b) Defendant's general manager regularly had Plaintiffs and Class Members send him photographs and videos of themselves and their performances, which Defendant transmitted over interstate social-media platforms to advertise the Club to customers in Pennsylvania, Ohio, New York, and elsewhere; (c) Plaintiffs and Class Members regularly received earnings from, and made the "tip-out" payments Defendant demanded through, interstate electronic payment networks such as Cash App, and performed for customers who paid with cash drawn from the Club's ATM; and (d) Plaintiffs and Class Members regularly performed for customers who traveled to the Club from Ohio and New York along Interstate 90, which runs through Erie County from the Ohio line to the New York line a few miles from the Club; upon information and belief, the Club draws its customers from, and advertises to, the surrounding tri-state region.

## V. FACTUAL ALLEGATIONS

22. During the relevant period, Defendant operated the Club as an adult entertainment venue whose business is the presentation of exotic dancers, advertising it as a "Gentlemens club offering room dances and vip rooms" featuring "live on stage entertainment dancers."

23. During the relevant period, the Club held no liquor license and sold no alcohol; it instead operated as a "bring your own bottle" ("BYOB") establishment, and Defendant required Plaintiffs and Class Members to perform fully nude for the entertainment of its customers.

24. During the relevant period, the Club was open Tuesday through Sunday from approximately 8:00 p.m. until approximately 2:00 a.m., was closed on Mondays, and operated a Friday daytime or "lunch" shift from approximately 11:30 a.m. or noon until approximately 4:00 or 4:30 p.m.

25. During the relevant period, the Club occupied more than 10,000 square feet. It included a main stage with a pole and LED lighting, a bar area, private "room" dance areas, VIP rooms, a dancers' dressing room, an ATM, and an inspected kitchen from which Defendant served food on Fridays and Saturdays.

26. During the relevant period, George Askins ("Askins") was the Club's primary owner.

27. During the relevant period, Fred Gemler ("Gemler") was the Club's general manager and, on Defendant's behalf, hired, scheduled, directed, and disciplined Plaintiffs and Class Members.

28. During the relevant period, apart from its general manager, Defendant's DJs, and any door or kitchen staff, Defendant employed Plaintiffs and Class Members as the Club's workforce.

29. During the relevant period, Askins and Gemler exercised authority over every aspect of Plaintiffs' and Class Members' work as exotic dancers within the Club.

30. Brace began her work as an exotic dancer within the Club in or about August 2020.

31. After Brace's first day, Gemler dismissed Brace, but later, in or about November 2020, re-hired Brace to work as an exotic dancer within the Club.

32. Thereafter, Defendant continuously employed Brace to work as an exotic dancer within the Club through approximately September 2024.

33. During that period, Defendant scheduled, directed, suffered, or permitted Brace to regularly and customarily work six (6) or seven (7) shifts per week, including evening shifts and the Friday day shift.

34. In or about September 2024, Brace relocated to Iowa for personal reasons but continued to work at the Club, regularly traveling approximately thirteen (13) hours each way to perform her shifts—seven (7) to fourteen (14) shifts per month through approximately March 2026, six (6) to seven (7) per month from March through May 2026, and, after returning to Pennsylvania, one (1) to two (2) per week in June and July 2026.

35. Throughout her employment, Defendant customarily scheduled Brace to work the Friday day shift and evening shifts (most often Tuesday, Thursday, and Sunday), plus other nights when Gemler asked Brace to come in, and Brace averaged approximately twenty (20) hours per week in the weeks she worked.

36. On or about July 24, 2026, Gemler terminated Brace's employment after she did not appear for shifts while moving her belongings back to Pennsylvania.

37. In or about February 2025, Defendant hired Jones to begin working as an exotic dancer within the Club.

38. Jones, thereafter, worked as an exotic dancer within the Club for approximately one (1) month.

39. In or about April 2025, Defendant re-hired Jones to work as an exotic dancer within the Club.

40. Thereafter, Defendant scheduled, directed, suffered, or permitted Jones to typically work evening shifts Tuesday through Saturday from approximately 8:30 or 9:00 p.m. until closing at approximately 2:00 a.m. (or later when performing in a VIP room at closing), plus the Friday day shift, averaging approximately twenty (20) to twenty-four (24) hours per week.

41. During Jones' final several weeks of employment, Jones typically worked one (1) to two (2) shifts per week.

42. In or about July 2026, Defendant last employed Jones to work as an exotic dancer within the Club.

43. Because Jones missed a shift scheduled in or about July 2026, Defendant effectively terminated Jones' employment by failing or refusing to schedule Jones for future shifts.

44. Upon information and belief, during the relevant period, Defendant employed forty (40) or more Class Members to work as exotic dancers within the Club.

45. Throughout the relevant period, Defendant commonly and uniformly classified Plaintiffs and Class Members as non-employees and paid Plaintiffs and Class Members no wages for the shifts or hours Defendant employed, scheduled, directed, suffered, or permitted Plaintiffs and Class Members to work as exotic dancers within the Club.

46. Throughout the relevant period, the only money Plaintiffs and Class Members received in exchange for working as exotic dancers within the Club consisted of (a) tips handed to them by customers while performing, and (b) the portion of customers' payments for private, "room," VIP, and "gold coin" dances that Defendant did not keep for itself.

47. At no time before or during the relevant period did Defendant provide Plaintiffs or Class Members with the required notice of the tip-credit provisions of the FLSA or the PMWA.

48. At no time during the relevant period did Defendant pay Plaintiffs or Class Members the direct wages required of an employer taking a tip credit.

49. At no time during the relevant period did Defendant permit Plaintiffs or Class Members to keep or retain all tips Plaintiffs and Class Members earned and received from customers within the Club.

50. At no time during the relevant period did Defendant make, keep, or preserve records of the hours Plaintiffs and Class Members worked, the tips and dance payments they received, or the amounts Defendant kept, deducted, or assigned, as required by 29 U.S.C. § 211(c), 29 C.F.R. Part 516, and 34 Pa. Code §§ 231.31 and 231.34.

51. Throughout the relevant period, Defendant, primarily through Gemler, decided whether Plaintiffs or Class Members were permitted to work as exotic dancers within the Club.

52. Throughout the relevant period, Defendant, primarily through Gemler, managed and supervised Plaintiffs and Class Members within the Club, ensuring their compliance with Defendant's rules and policies and requiring them to remain within the Club until closing or until Gemler excused them by giving his permission to leave a shift early.

53. Throughout the relevant period, Defendant controlled Plaintiffs' and Class Members' appearance and attire while working as exotic dancers within the Club, requiring them to perform fully nude and dictating their dress and appearance when they were working within the Club but not performing.

54. Throughout the relevant period, Defendant controlled the stage within the Club: its DJs selected and played the music, announced Plaintiffs and Class Members by stage name, and called them to the stage in a rotation set by the DJ and/or Gemler.

55. Throughout the relevant period, Defendant did not allow Plaintiffs or Class Members to decline their turn to perform on stage within the Club or choose when, how long, or to what music they performed on stage.

56. Throughout the relevant period, Defendant controlled Plaintiffs' and Class Members' interactions with customers within the Club, directed Plaintiffs and Class Members to particular customers, told Plaintiffs and Class Members when customers were waiting, and expected Plaintiffs and Class Members to circulate, solicit private dances, and entertain customers within the Club throughout their shifts.

57. Throughout the relevant period, Defendant set, and Plaintiffs and Class Members could not negotiate or vary, the price of every service offered by exotic dancers to customers within the Club.

58. Throughout the relevant period, Defendant deducted, kept, and retained about 30%–60% of the money Plaintiffs and Class Members received from Defendant's customers for performing each VIP, private, or semi-private dance within the Club.

59. Throughout the relevant period, Defendant required and pressured dancers to "tip out" Gemler and the DJs on every shift from the tips and dance payments Plaintiffs and Class Members received from Defendant's customers for working as exotic dancers within the Club, typically between $20 and $40 per shift, and occasionally $100 or more.

60. During the relevant period, Gemler regularly required Plaintiffs and Class Members to pay him his per-shift mandatory "tip out," in whole or in part, through Cash App.

61. Throughout the relevant period, Defendant controlled all advertising and promotions for the Club.

62. During the relevant period, Gemler regularly photographed and video-recorded Plaintiffs and Class Members performing as exotic dancers within the Club and/or asked Plaintiffs and Class Members to send him photographs and videos of themselves performing as exotic dancers within the Club and posted the content on social media to promote the Club and advertise for customers to come to the Club.

63. During the relevant period, Defendant supervised Plaintiffs and Class Members within the Club by monitoring Plaintiffs and Class Members through video surveillance cameras throughout the Club, including in the designated dancers' dressing room within the Club, and through Gemler's supervision of Plaintiffs and Class Members on the Club's floor.

64. Throughout the relevant period, Defendant controlled every aspect of the environment on which Plaintiffs' and Class Members' earnings depended, including the Club's location, hours, admission and BYOB policies, food, drink, and dance prices, music, lighting, stage, private-dance areas, food service, security, and advertising.

65. Throughout the relevant period, Plaintiffs' and Class Members' earnings from their work as exotic dancers within the Club depended almost entirely on factors Defendant alone controlled, including customer traffic to the Club, which turned on the Club's location, reputation, hours, advertising, and staffing; the prices Defendant charged; the share of each dance or VIP payment Defendant kept and retained; and the tip-outs Defendant required.

66. At no time during the relevant period did Defendant require Plaintiffs or Class Members to have any experience, training, certification, or specialized skill as a precondition of working as an exotic dancer within the Club.

67. Throughout the relevant period, Defendant made and paid for every significant investment in the Club's business, including the premises, stage, poles, lighting, sound and DJ equipment, VIP rooms, dressing room, kitchen, ATM, surveillance cameras, and advertising, while Plaintiffs' and Class Members' investment was limited to the costumes, footwear, and cosmetics that Defendant's appearance requirements obliged them to buy.

68. Throughout the relevant period, Plaintiffs and Class Members worked for Defendant within the Club for indefinite periods on a recurring basis, subject to termination at Defendant's will, as reflected by Brace's nearly six (6) years and Jones' approximately eighteen (18) months of work within the Club.

69. Throughout the relevant period, Plaintiffs' and Class Members' work as exotic dancers within the Club was integral to and necessary for Defendant's continued operation of the Club.

70. At all times during the relevant period, Plaintiffs and Class Members qualified as Defendant's "employees" under the FLSA and Pennsylvania law.

71. At all times during the relevant period, Defendant qualified as Plaintiffs' and Class Members' "employer" under the FLSA and Pennsylvania law.

72. At all times during the relevant period, Defendant failed to pay Plaintiffs and Class Members "free and clear" wages in amounts required for all hours worked, in violation of the FLSA and Pennsylvania law.

73. At all times during the relevant period, Defendant took or assigned unlawful kickbacks and/or deductions of the tips and other monies Plaintiffs and Class Members earned and received from Defendant's customers while working as exotic dancers within the Club, in violation of the FLSA and Pennsylvania law.

74. Throughout the relevant period, Defendant perpetrated its violations of Plaintiffs' and Class Members' FLSA and Pennsylvania wage payment rights knowingly, willfully, and in reckless disregard of those rights, and not in good faith.

## VI. COLLECTIVE ACTION ALLEGATIONS

75. Plaintiffs bring Counts I and II as a collective action under 29 U.S.C. § 216(b) on behalf of themselves and the following similarly situated individuals (the "FLSA Collective"):

> All individuals who worked as exotic dancers at Partners Gentlemen's Club, 4712 East Lake Road, Erie, Pennsylvania, at any time from three (3) years before the filing of this Complaint through the date of final judgment in this action.

76. Plaintiffs and members of the FLSA Collective are similarly situated because (a) Defendant employed each as exotic dancers within the Club, (b) Defendant misclassified each as a non-employee, (c) Defendant paid each no wages for hours and shifts each worked as an exotic dancer within the Club, and (d) Defendant assessed kickbacks and/or deducted, withheld, or assigned earned tips and other monies each received from customers while working as an exotic dancer within the Club.

77. Upon information and belief, the FLSA Collective includes more than forty (40) individuals.

78. Questions of law and fact common to Plaintiffs and the members of the FLSA Collective include: (a) whether Plaintiffs and the members of the FLSA Collective were Defendant's employees under the FLSA; (b) whether Defendant failed to pay them the Federal Minimum Wage for all hours worked; (c) whether Defendant unlawfully kept, deducted, withheld, or assigned their tips; and (d) whether Defendant's violations were willful or in good faith.

79. As a result of the FLSA violations described above, Defendant commonly owes Plaintiffs and members of the FLSA Collective (a) earned and unpaid wages at the full "free and clear" Federal Minimum Wage rate for all hours worked as exotic dancers within the Club during the FLSA recovery period; (b) reimbursement of all unlawful kickbacks and tips taken, deducted, withheld, or assigned during the FLSA recovery period; (c) statutory liquidated damages; (d) pre- and post-judgment interest; and (e) attorneys' fees and costs.

## VII. CLASS ACTION ALLEGATIONS

80. Plaintiffs bring Count III (PMWA) as a class action under Federal Rule of Civil Procedure 23(a), 23(b)(3), and, in the alternative, 23(c)(4), on behalf of themselves and the following class (the "Pennsylvania Class"):

> All individuals who worked as exotic dancers at Partners Gentlemen's Club, 4712 East Lake Road, Erie, Pennsylvania, at any time from three (3) years before the filing of this Complaint through the date of final judgment in this action.

81. The Pennsylvania Class is so numerous that joinder is impracticable. Upon information and belief, it includes more than forty (40) members, most of whom are unlikely to pursue individual claims against Defendant.

82. Common questions whose resolution will drive this litigation include: (a) whether Plaintiffs and the members of the Pennsylvania Class were Defendant's employees under the PMWA; (b) whether Defendant failed to pay Plaintiffs and the members of the Pennsylvania Class the Pennsylvania Minimum Wage for all hours worked; and (c) whether Defendant unlawfully deducted, retained, and/or assigned portions of the monies Defendant's customers paid Plaintiffs and the members of the Pennsylvania Class for work and performances as exotic dancers within the Club.

83. Plaintiffs' claims are typical of the PMWA claims held by members of the Pennsylvania Class because (a) Defendant employed Plaintiffs and members of the Pennsylvania Class to work as exotic dancers within the Club during the relevant period, (b) Defendant misclassified Plaintiffs and members of the Pennsylvania Class as non-employees, (c) Defendant paid Plaintiffs and members of the Pennsylvania Class no wages for the hours and shifts Plaintiffs and members of the Pennsylvania Class worked as exotic dancers within the Club, and (d) Defendant subjected Plaintiffs and members of the Pennsylvania Class to the kickback, withholding, and tip-out policies and practices governing their work as exotic dancers within the Club.

84. Plaintiffs will fairly and adequately protect the interests of the Pennsylvania Class.

85. Plaintiffs do not have interests that are antagonistic to the Pennsylvania Class.

86. Plaintiffs have retained counsel experienced in wage-and-hour class and collective litigation with the resources to prosecute this action to judgment.

87. Common questions predominate because Defendant's liability turns on uniform policies that applied to Plaintiffs and the Pennsylvania Class in the same way.

88. Plaintiffs' and Class Members' PMWA damages can be determined through common evidence and reasonable inference.

89. A class action is superior for the prosecution of the PMWA claims of Plaintiffs and the members of the Pennsylvania Class because members of the Pennsylvania Class are low-wage workers whose individual claims are modest relative to the cost of litigation, who may fear retaliation, and who are unlikely to know their rights.

## VIII. CAUSES OF ACTION

### COUNT I
### FLSA – Failure to Pay Minimum Wage
### (On Behalf of Plaintiffs and the FLSA Collective)

90. Plaintiffs incorporate the foregoing paragraphs by reference.

91. The FLSA required Defendant to pay Plaintiffs and the members of the FLSA Collective for each hour worked at a rate not less than the full "free and clear" Federal Minimum Wage ($7.25 per hour) without any kickback, direct or indirect, to Defendant or to another person for Defendant's benefit. 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 531.35.

92. At all times relevant, Defendant paid Plaintiffs and the members of the FLSA Collective no wages for any hour of work in any workweek.

93. During the relevant period, Defendant assessed, deducted, or withheld unlawful kickbacks against Plaintiffs and members of the FLSA Collective by taking, withholding, deducting, or assigning tips and other earned monies Plaintiffs and members of the FLSA Collective received from customers while working as exotic dancers within the Club, thereby reducing the compensation and effective wage rate of Plaintiffs and the members of the FLSA Collective further below the Federal Minimum Wage.

94. During the relevant period, Defendant violated Plaintiffs' and the members of the FLSA Collective's FLSA minimum wage rights by failing to pay Plaintiffs and the members of the FLSA Collective at least $7.25 per hour, "free and clear," for every hour Plaintiffs and members of the FLSA Collective worked.

95. Defendant's violations of Plaintiffs' and the members of the FLSA Collective's FLSA minimum wage rights were willful and reckless, and Defendant did not act in good faith or with reasonable grounds to believe its conduct was lawful.

96. Defendant is liable to Plaintiffs and each member of the FLSA Collective in the amount of her "free and clear" unpaid minimum wages, an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest as permitted by law.

**COUNT II**
**FLSA – Unlawful Retention of Employees' Tips**
**(On Behalf of Plaintiffs and the FLSA Collective)**

97. Plaintiffs incorporate the foregoing paragraphs by reference.

98. Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B); see 29 C.F.R. §§ 531.52(b), 531.54(b).

99. During the relevant period, the monies customers paid Plaintiffs and members of the FLSA Collective in recognition of their exotic-dancer performances within the Club qualified as tips under the FLSA.

100. During the relevant period, on each shift, Defendant kept, retained, or assigned portions of the tips of Plaintiffs and the members of the FLSA Collective, in direct violation of their FLSA tip-retention rights.

101. Defendant's violations of Plaintiffs' and the members of the FLSA Collective's FLSA tip-retention rights were willful and reckless, and Defendant did not act in good faith or with reasonable grounds to believe its conduct was lawful.

102. Defendant is liable to Plaintiffs and the members of the FLSA Collective for the sum of all tips unlawfully kept or assigned, an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest as permitted by law.

## COUNT III

**PMWA – Failure to Pay Minimum Wage**
**(On Behalf of Plaintiffs and the Pennsylvania Class)**

103. Plaintiffs incorporate the foregoing paragraphs by reference.

104. The PMWA required Defendant to pay Plaintiffs and the members of the Pennsylvania Class for each hour worked at a rate not less than the full "free and clear" Pennsylvania Minimum Wage ($7.25 per hour) without any kickback, direct or indirect, to Defendant or to another person for Defendant's benefit. 43 P.S. § 333.104(a), (a.1); 34 Pa. Code § 231.101a(a).

105. At all times relevant, Defendant paid Plaintiffs and the members of the Pennsylvania Class no wages for any hour of work in any workweek.

106. During the relevant period, Defendant assessed, deducted, or withheld unlawful kickbacks against Plaintiffs and members of the Pennsylvania Class by taking, withholding, deducting, or assigning tips and other earned monies Plaintiffs and members of the Pennsylvania Class received from customers while working as exotic dancers within the Club, thereby reducing the compensation and effective wage rate of Plaintiffs and the members of the Pennsylvania Class further below the Pennsylvania Minimum Wage.

107. During the relevant period, Defendant violated Plaintiffs' and the members of the Pennsylvania Class's PMWA minimum wage rights by failing to pay Plaintiffs and the members of the Pennsylvania Class at least $7.25 per hour, "free and clear," for every hour Plaintiffs and members of the Pennsylvania Class worked.

108. Defendant's violations of Plaintiffs' and the members of the Pennsylvania Class's PMWA minimum wage rights were willful and reckless, and Defendant did not act in good faith or with reasonable grounds to believe its conduct was lawful.

109. Under 43 P.S. § 333.113, Defendant is liable to Plaintiffs and each member of the Pennsylvania Class in the amount of her "free and clear" unpaid minimum wages, reasonable attorneys' fees and costs, and pre- and post-judgment interest as permitted by law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant and grant the following relief:

A. Designating this action as a collective action under 29 U.S.C. § 216(b) on behalf of the FLSA Collective, authorizing prompt notice to its members so that they may opt in by filing written consents, and tolling the limitations period pending such notice;

B. Certifying the Pennsylvania Class under Federal Rule of Civil Procedure 23, appointing Plaintiffs as Class Representatives and their counsel as Class Counsel, and directing appropriate notice to the Class;

C. Declaring that Plaintiffs and the members of the FLSA Collective and the Pennsylvania Class are and were Defendant's employees under the FLSA and PMWA, and that Defendant's practices described herein violate those statutes;

D. Awarding Plaintiffs and the members of the FLSA Collective their unpaid minimum wages, and all tips or other monies unlawfully kept by Defendant, together with an additional equal amount as liquidated damages, under 29 U.S.C. § 216(b);

E. Awarding Plaintiffs and the members of the Pennsylvania Class their unpaid minimum wages due and owed under the PMWA;

F. Awarding pre-judgment and post-judgment interest as permitted by law;

G. Awarding Plaintiffs their reasonable attorneys' fees and the costs of this action; and

H. Granting such other and further relief as the Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

**McNAIR LAW OFFICES, PLLC**

*/s/ Timothy D. McNair*________
Timothy D. McNair, Esq. (PA # 34304)
821 State St.
Erie, PA 15601
P: 814-452-0700
F: 814-454-2371
E: tmcnair@mcnairlaw.com

*Counsel for Plaintiffs and the Putative FLSA Collective and Pennsylvania Class*